UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

PETER GOMEZ,

                              Petitioner,

         v.                                          9:19-CV-1571
                                                     (TJM)

MARK MILLER, Superintendent,
Green Haven Correctional Facility[1],

                              Respondent.

---

APPEARANCES:                              OF COUNSEL:

PETER GOMEZ
Petitioner pro se
15-A-3674
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

HON. LETITIA JAMES                        PAUL B. LYONS, ESQ.
Attorney for Respondent                   Ass't Attorney General
New York State Attorney General
28 Liberty Street
New York, NY 10005

THOMAS J. MCAVOY
Senior United States District Judge

**DECISION and ORDER**

## I.      INTRODUCTION

Petitioner Peter Gomez ("Petitioner") seeks federal habeas corpus relief pursuant to

28 U.S.C. § 2254.  Dkt. No. 1 ("Petition").  On January 22, 2021, with the Court's permission,

Petitioner filed a Second Amended Petition.  Dkt. No. 24 ("Sec. Am. Pet.").  On January 26,

---

[1] Mark Miller, Superintendent, Green Haven Correctional Facility, is substituted for Mark Royce.  Fed. R. Civ. P. 25(c).

2021, the Court directed Respondent to answer the Second Amended Petition.  Dkt. No. 25.

Respondent opposed the petition.  Dkt. No. 28, Memorandum of Law in Opposition; Dkt. No.

29, Answer; Dkt. No. 30, State Court Records.  Petitioner filed a traverse (Dkt. No. 32) and a

supplemental traverse (Dkt. No. 34).

For the reasons that follow, the habeas petition is denied and dismissed.

## II.   RELEVANT BACKGROUND

### A.  Indictment

In April 2014, an Albany County grand jury returned a four-count indictment charging

Petitioner with criminal possession of a controlled substance in the first degree, criminal

possession of a controlled substance in the third degree, criminal sale of a controlled

substance in the first degree, and operating as a major trafficker.  SR. at 14-18.[2]  The

charges arose from Petitioner's possession of cocaine with intent to sell in Cohoes, New York

on March 18, 2014.  *Id*.  Police executed a search warrant for the search of a 2010 black

Nissan and recovered four clear plastic bags containing cocaine.  *Id*. at 138-139, 143.

### B.  Suppression Hearing

In May 2014, Petitioner filed a pre-trial counseled omnibus motion.  SR. at 115-151.

Of relevance herein, Petitioner sought a *Huntley* and *Dunaway-Mapp*[3] hearing related to

---

[2]   "SR" refers to the state court record, found at Dkt. No. 30-1.  "TR" refers to the transcripts of the suppression, plea, and sentencing hearings, found at Dkt. No. 30-2.  Citations to the submissions refer to the pagination generated by CM/ECF, the Court's electronic filing system.

[3]   A pretrial hearing pursuant to *People v. Huntley*, 15 N.Y.2d 72 (1965), is held to determine the voluntariness of inculpatory statements made by a criminal defendant to law enforcement officers.  *See Huntley*, 15 N.Y.2d at 77–78.  A *Dunaway* hearing is used to determine whether an arrest is supported by probable cause. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248 (1979).  A *Mapp* hearing is a hearing to determine whether suppression of evidence obtained pursuant to a search or seizure by police officers is constitutionally warranted. *See Mapp v. Ohio*, 367 U.S. 643 (1961).

tangible property recovered from a search of his vehicle and his oral statements.  *Id*.  The trial court scheduled a *Huntley* and *Dunaway-Mapp* hearing (hereinafter "suppression hearing") to resolve the motions.  *Id.* at 159.

The suppression hearing was held in Albany County Court on June 27, 2014 and July 10, 2014.  TR. at 118.  Petitioner was represented at the suppression hearing by retained counsel, Attorney Cheryl Coleman.  *Id.*

At the hearing, Inv. Missenis, an investigator assigned to the Community Narcotics Enforcement Team and employed with the State Police for over 24 years, was called to testify.  TR. at 22-23.  Inv. Missenis submitted an application for a search warrant to Cohoes City Court Judge Van Ullen on March 14, 2014.  *Id*. at 24-25.  In the application, Inv. Missenis outlined his investigation that led to the application to search a 2007 white Audi AQ7 bearing New York registration GLC-7699.  *Id*. at 28-29, SR. at 147.  In the sworn application, Inv. Missenis claimed he received information for an unnamed confidential informant ("CI") that Petitioner distributed large quantities of cocaine.  SR. at 146–151.  The CI reported Petitioner was expected to arrive in Cohoes on March 14, 2014 and that he drove "a couple different vehicles, a white Audi Q7" and "a black Nissan Sentra" with a New Jersey registration, owned by Petitioner's girlfriend.  *Id*. at 148; TR. at 43.  The black Nissan was not the target of the warrant because Inv. Missenis did not know the license plate number.  TR. at 29, 44.  Judge Van Ullen signed the warrant on March 14, 2014.  SR. at 145.  Inv. Missenis attempted to execute the warrant, but Petitioner did not arrive in Cohoes on March 14, 2014, in any vehicle.  TR. at 13, 43.

Inv. Missenis later learned from the CI that Petitioner would arrive "a few days later."

3

TR. at 52-54.  Inv. Missenis testified that, on March 18, 2014, at approximately 5:30 p.m., Petitioner arrived on Lincoln Avenue in Cohoes, NY in a black Nissan.  *Id*. at 31.  Inv. Missenis and Investigator Vardeen approached the driver's side of the vehicle and Vardeen "pulled out her gun."  *Id*. at 40.  Petitioner "ran off," but was apprehended within minutes, handcuffed and transported to the police station.  *Id*.

After Petitioner was detained, Inv. Missenis submitted an application for a search warrant for a 2010 black Nissan with New Jersey registration H39DCY to Judge Van Ullen.  TR. at 30-31.  In the application, Inv. Missenis referred to the March 14, 2014 application and warrant.  *Id*. at 44; SR. at 141.  Inv. Missenis averred, "[i]t should be noted that a couple of minutes before the traffic stop, CS-1 contacted your affiant and advised that Peter Gomez was in the area of 27 Lincoln Ave with the delivery of cocaine."  SR. at 142.  Judge Van Ullen signed the warrant on March 18, 2014.  *Id*. at 139.  Inv. Missenis executed the search warrant and recovered two plastic bags from the trunk containing a 2.2-pound brick of powder cocaine.  TR. at 35-36.

The prosecution also called Investigator Robert Marrero ("Inv. Marrero") to testify.  TR. at 58.  Inv. Missenis called Inv. Marrero on March 18, 2014 to speak with Petitioner because "they assumed he didn't speak any English."  *Id*. at 59-60.  Inv. Marrero did not tell Petitioner he was under arrest and, to Marrero's knowledge, no one else told Petitioner he was under arrest.  *Id*. at 68-60.  Inv. Marrero and Petitioner engaged in "small talk," in English and Spanish, at the State Police barracks in Latham.  *Id*. at 61. At that time, Petitioner was in handcuffs and "chained to a wall."  *Id*. at 71.  During the conversation, Petitioner asked, in English, "what was going on" and Inv. Marrero responded "I really don't know" but explained to Petitioner that he was taken into custody because he ran from the vehicle.  TR. at 62, 74.

Petitioner then asked if there was a warrant on his vehicle and Inv. Marrero responded, "I don't know." *Id*. at 62, 75.

The trial court rendered a written decision denying Petitioner's motion to suppress. SR. at 163-169.  The trial court concluded, "[t]he information submitted in the March 14, 2014 search warrant application was clearly incorporated by reference into the second search warrant application." *Id*. at 167.  The trial court continued, "the prior search warrant application was both available to the City Court Judge and sufficiently fresh in the Judge's memory so that he could accurately assess it[]" and further, the prior search warrant application was "available to [the City Court Judge] in a form which could be reviewed at a later date." *Id*.  Accordingly, the trial court concluded that the March 18, 2014 search warrant was not defective and denied Petitioner's motion to suppress the tangible evidence.  *Id*. at 167-168.  The trial court also denied Petitioner's motion to suppress his statements regarding a warrant for his vehicle finding, "although the conversation clearly took place in a custodial setting," the statements were "spontaneous and unprompted by any inquiry."  SR. at 167-168.

## C.  Supplemental Indictment

On October 7, 2014, Petitioner filed a counseled Order to Show Cause to dismiss Counts Two, Three, and Four of the indictment.  SR. at 170-183.  The trial court granted the motion, in part, and dismissed Counts Three and Four, with leave to re-present.  *Id*. at 192.  On January 23, 2015, the grand jury returned an indictment charging Petitioner with criminal sale of a controlled substance in the first degree and operating as a major trafficker.  *Id*. at 18-19.  This indictment was consolidated with the original indictment.  *Id*. at 199.

## D.  Plea and Sentencing Proceedings

On July 24, 2015, Petitioner and his counsel appeared in Albany Supreme Court for a hearing. TR. at 81. At the commencement, the trial court acknowledged that the People extended a plea offer to Petitioner; Petitioner would plead guilty to an A-II felony of criminal sale of a controlled substance in the second degree, in full satisfaction of the indictment, in exchange for a sentence of twelve years, five years post-release supervision, and a waiver of Petitioner's right to appeal. *Id.* at 81-82. Petitioner's counsel indicated he wished to accept the plea. *Id*. at 82.

Petitioner was placed under oath. TR. at 82. Petitioner stated he had enough time to discuss the case and plea agreement with his counsel. *Id*. at 85. Petitioner represented he could understand English and the proceedings, and had not taken any medication or drugs which would impair his thinking. *Id.* at 84-85. The court then explained the myriad of trial rights to which Petitioner was entitled and agreed to waive as a condition of the plea agreement. TR. at 86-87. Petitioner also stated he had not been promised anything or threatened into pleading guilty. *Id.* at 88. Petitioner was presented with, and signed, a waiver of appeal form. *Id.* at 90-91.

The court engaged in a colloquy with Petitioner whereupon he admitted to knowingly and unlawfully selling cocaine in excess of one-half ounce or more on March 18, 2014. TR. at 93-94. When the trial judge asked Petitioner if he had questions for the court, Petitioner "asked for a weekend" with his children. *Id.* at 95. The court responded, "I was willing to allow you to turn yourself in on Monday if you plead to the A-I with a possible sentence of up to 24 years." *Id.* at 96. The court stated that the plea offer was "A-II and you would plea to it today and be put in today." *Id*. Petitioner agreed. *Id*.

On September 4, 2015, Petitioner was sentenced as a second felony offender to a

6

twelve-year determinate sentence followed by five years post-release supervision.  TR. at 110.

On September 8, 2015, Petitioner's counsel filed a notice of appeal.  SR. at 11.

### E.  Direct Appeal

On September 1, 2017, Petitioner filed a counseled brief and appendix in the Appellate Division, Third Department ("AD").  SR. 223-432.  The issues raised by Petitioner in his direct appeal to the AD included: (1) the validity of his guilty plea and waiver of appeal; (2) the trial court erred in denying Petitioner's motion to suppress the tangible evidence and his statements; and (3) the trial court imposed a harsh and excessive sentence.  *Id*. at 229.  The AD dismissed Petitioner's direct appeal on May 1, 2018.  *People v. Gomez*, 162 A.D.3d 1311 (3d Dep't 2018).

First, the AD noted Petitioner's challenge to the voluntariness of his guilty plea was unpreserved for review and "defendant made no statements during the plea colloquy to trigger the narrow exception to the preservation requirement[.]"  *Gomez,* 162 A.D.3d at 1312.  Next, the AD agreed that Petitioner's appeal waiver was invalid.  *Id*.  Third, the AD concluded the trial court appropriately denied Petitioner's motion to suppress Petitioner's statement "because it was spontaneous and not elicited by police interrogation[.]"  *Id*.  Similarly, the AD found the trial court properly denied suppression of the cocaine seized from Petitioner's car because the police "incorporate[d] by reference the prior search warrant application into the subsequent application[.]"  *Id*.  The AD reasoned, "the earlier information was given under oath to the same judge, who had a copy available to him and it was fresh in his memory, having been submitted only four days earlier."  *Gomez*, 162 A.D.3d at 1312.  The AD found the confidential informant to be reliable noting that the informant previously provided

information to the police in another investigation, and his information was supported by text messages, which were seen by the officer who applied for the search warrant. *Id*. Finally, given the nature of the crime and Petitioner's criminal history, the AD concluded that the sentence was not harsh or excessive. *Id*.

The New York State Court of Appeals denied Petitioner's application for leave to appeal the AD's decision on January 14, 2019. SR. at 458.

### F. Motion to Vacate Judgment

On February 21, 2018, while Petitioner's direct appeal was pending, he filed a pro se motion to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10 on the grounds that: (1) the trial court lacked jurisdiction because a laboratory report was not filed with the court pursuant to CPL § 715.50[4]; and (2) trial counsel was ineffective for: (a) failing to request a *Darden*[5] hearing; (b) failing to investigate the information in the search warrant application and affidavits; (c) failing to demand the identity of the confidential informant; (d) making inappropriate admissions in the omnibus motion; (e) failing to move to dismiss the indictment based upon CPL § 715.50; and (f) unilaterally waiving Petitioner's right to testify before the grand jury. SR. at 459-480.

The People opposed Petitioner's § 440 motion. SR. at 545-549.

On July 2, 2018, the Albany Supreme Court denied Petitioner's § 440 motion. SR. at

---

[4] CPL § 715.50 provides, in pertinent part: "[. . . ] in every felony case involving the possession or sale of a dangerous drug, the head of the agency charged with custody of such drugs, or his designee, shall within forty-five days after receipt thereof perform or cause to be performed an analysis of such drugs, such analysis to include qualitative identification; weight and quantity where appropriate. Within ten days after the report of such analysis is received by such agency, the head thereof or his designee shall forward a copy thereof to the appropriate district attorney and inform him of the location where the subject drugs are being held."

[5] A *Darden* hearing is used to challenge the actual existence and reliability of any confidential informer who provided information that served as the basis for probable cause for a defendant's arrest. *See Daly v. Lee*, No. 11-CV-3030, 2014 WL 1349076, at *15 (E.D.N.Y. Apr. 4, 2014) (citing *Darden v. NY*, 34 N.Y.2d 177, 180 (1974)).

551-553.  The court first found Petitioner's jurisdictional claims to be without merit and held,

"[t]he Court has not been persuaded that jurisdiction over the case and defendant would be

in any way divested by the language of CPL § 715.50 and/or any of defendant's allegations

about laboratory reports."  *Id*. at 551-552.  Second, citing to § 440.10(2)(b)[6], the trial court

denied Petitioner's first five ineffective assistance of counsel claims holding that "sufficient

facts appear on the record with respect to the ineffective assistance issue to permit adequate

review thereof on appeal[.]"  *Id*.  The court also found that the sixth ground lacked merit.  *Id*.

The state court noted, "to the extent defendant has raised any additional ineffective

assistance claims that are outside the record, the Court finds said arguments to be wholly

conclusory and insufficient to warrant 440.10 relief and/or a hearing."  *Id*.  The court

concluded, "[d]efendant's remaining arguments and requests for relief have been considered

and found to be wholly lacking in merit."  SR. at 522.

Petitioner filed an application for permission to appeal.  SR. at 554-659.  The AD

denied Petitioner's request.  *Id.* at 661.

## III.    SECOND AMENDED PETITION

Petitioner contends he is entitled to federal habeas relief because (1) his plea was

involuntary; (2) the search warrant lacked probable cause; (3) the trial court lacked

jurisdiction; and (4) his retained counsel was constitutionally ineffective.  Dkt. No. 24; Dkt.

No. 25 at 3.

---

[6] CPL § 440.10(2)(b) provides in pertinent part that a court may deny a motion to vacate a judgment when "[t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal."

9

## IV.    DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. §§2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 180-81, 185 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'"  *Nevada v. Jackson*, 569 U.S. 505, 508-509 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, the AEDPA foreclosed "using federal habeas corpus review as a vehicle

10

to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 567 U.S. 37 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). A state court's findings are not unreasonable under §2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

## B. Petitioner's Guilty Plea

Petitioner contends his guilty plea was not made knowingly and intelligently due to the "coercive conduct of the trial court[.]" Dkt. No. 24 at 2. Respondent did not address this claim in the memorandum of law in opposition.

A federal court is precluded from issuing a writ of habeas corpus if an adequate and independent state-law ground justifies the petitioner's detention. *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977). Accordingly, "[f]ederal courts generally will not consider a federal issue in a case if the decision of the state court rests on a state law ground that is

11

independent of the federal question and adequate to support the judgment." *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). This results in a state-law procedural default. *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *see also Harris v. Reed*, 489 U.S. 255, 262 (1989) ("[A] federal claimant's procedural default precludes federal habeas review . . . only if the last state court rendering a judgment in the case rests its judgment on the procedural default.").

This analysis applies with equal force "whether the independent state law ground is substantive or procedural . . . ." *Garvey*, 485 F.3d at 713 (citing *Lee*, 534 U.S. at 375). Pursuant to this analysis, a state law ground is generally adequate where "it is firmly established and regularly followed in the state;" however, "in certain limited circumstances, even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule . . . [wa]s exorbitant." *Id.* at 713-14 (internal quotation marks omitted) (citing *Lee*, 534 at 376).

Here, the AD held that Petitioner's challenge to the voluntariness of his plea was unpreserved because he did not make a proper postallocution motion. *Gomez*, 162 A.D.3d at 1311-1312.

> New York courts routinely and regularly require defendants to make a motion . . . to withdraw their guilty plea or to vacate the judgment in order to preserve for appeal any claim relating to the validity of the plea itself . . . the Appellate Division's reliance on the state procedural rule . . . constitutes both an adequate and independent ground for its decision.

*Snitzel v. Murry*, 371 F.Supp.2d 295, 301 (W.D.N.Y. 2004) (citing cases); *see also Irvis v. Haggat*, No. 9:12-CV-1538 (FJS/TWD), 2015 WL 6737031, at *8-9 (N.D.N.Y. Nov. 3, 2015) ("Habeas courts in this Circuit have recognized that failure to move to withdraw a guilty plea

12

or move to vacate a judgment of conviction constitutes an independent and adequate state procedural rule barring federal habeas review of claims challenging the voluntariness of a plea . . . .") (citing cases).

While Petitioner filed a § 440 motion, the Petitioner challenged the court's jurisdiction and the assistance of counsel, not the validity of the plea itself.  SR. at 459-480.  In fact, Petitioner never argued that the plea was invalid, instead focusing on his counsel's failure to investigate, failure to move to dismiss the indictment, and waiver of Petitioner's right to testify before the grand jury.  *Id.*  Filing a § 440 motion alone is not enough to preserve an involuntary plea claim; instead, the motion must actually allege said claim.  *See Brown v. Rivera*, No. 9:05-CV-1478 (RFT), 2008 WL 2559372, at *2-*3 (N.D.N.Y. June 23, 2008) (dismissing petition as procedurally barred where petitioner's 440 motion "asserted several claims of ineffective assistance of counsel, however, none of those claims concerned [counsel's] failure to preserve this involuntary plea claim.").  Therefore, this represents an independent and adequate state rule resulting in a procedural default of Petitioner's claim.

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he or she is actually innocent. *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014); *see Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) ("'[A]ctual innocence' means factual innocence, not mere legal insufficiency.") (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).  To establish cause, petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule.  *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Coleman*,

13

501 U.S. at 753.  If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated.  *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

Here, the petition neither alleged nor does the record support any contentions of cause or actual innocence.  Moreover, the fact that Petitioner admitted his guilt indicates that no fundamental miscarriage of justice will occur if the procedural bar is applied.  *See Carpenter v. Unger*, Nos. 9:10-CV-1240 (GTS/TWD), 9:12-CV-0957 (GTS/TWD), 2014 WL 4105398, at *38 (N.D.N.Y. Aug. 20, 2014) (accepting recommendation to dismiss habeas petition as procedurally barred because, in the absence of any other evidence to the contrary, petitioner's admission of guilt in his plea allocution undercut any claims of actual innocence); *Brown*, 2008 WL 2559372, at *3 (holding that "[i]n light of Petitioner's . . . admissions, it is difficult to envision a meritorious claim of innocence with respect to his conviction," therefore the Court's "decision not to consider [petitioner's] claim would not result in a fundamental miscarriage of justice.").

Because cause has not been established, no discussion of prejudice is necessary. Thus, there is nothing that can save Petitioner's procedurally defaulted claim: habeas relief is precluded.

In any event, even if this claim was not defaulted, no relief would issue.  In order to comply with constitutional due process protections, a guilty plea must be knowing, voluntary and intelligent.  *See U.S. v. Ruiz*, 536 U.S. 622, 628-689 (2002) (citing *Boykin v. Alabama*,

14

395 U.S. 238, 243 (1969)); *Brady v. United States*, 397 U.S. 742, 748 (1970)).  "The

longstanding test for determining the validity of a guilty plea is whether the plea represents a

voluntary and intelligent choice among the alternative courses of action open to the

[petitioner]."  *Ferrer v. Superintendent*, 628 F.Supp.2d 294, 304 (N.D.N.Y. 2008) (quoting *Hill*

*v. Lockhart*, 474 U.S. 52, 56 (1985) (quotation marks omitted)).

> Applying this standard, to establish that a criminal defendant's
> guilty plea was knowingly, intelligently, and voluntarily entered the
> court must find, based upon the record of the relevant plea
> proceedings, that he or she 1) was competent to proceed and was
> fully aware of the nature of the charges faced; 2) had a rational and
> factual understanding of the proceedings; and, 3) was cognizant of
> the constitutional protections relinquished upon entry of the plea.

*Capra v. LeClair*, No. 9:06-CV-1230 (GTS/DEP), 2010 WL 3323676, at *9 (N.D.N.Y. Apr. 12,

2010) (citing *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004)).

In evaluating whether a plea was knowing and voluntary, a court may consider,

"among other things, [petitioner's] allocution statements."  *Carpenter*, 2014 WL 4105398, at

*19 (citing *U.S. v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)).

> [T]he representations of the [petitioner], his lawyer, and the
> prosecutor at such a hearing, as well as any findings made by the
> judge accepting the plea, constitute a formidable barrier in any
> subsequent collateral proceedings. Solemn declarations in open
> court carry a strong presumption of verity. The subsequent
> presentation of conclusory allegations unsupported by specifics is
> subject to summary dismissal, as are contentions that in the face of
> the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also Padilla v. Keane*, 331 F.Supp.2d

209, 217 (S.D.N.Y. Aug. 19, 2004) ("Where . . . [petitioner] . . . has explicitly stated in his

allocution that he fully understands the consequences of his plea and that he has chosen to

plead guilty after a thorough consultation with his attorney, a district court on habeas review

may rely on [petitioner's] sworn statements and hold him to them.").

"It is not coercion if a defendant pleads guilty to avoid a harsher sentence."  *Spikes v. Graham*, No. 9:07-CV-1129 (DNH/GHL), 2010 WL 4005044, at *7 (N.D.N.Y. July 14, 2010) (citing *Brady v. United States*, 397 U.S. 742, 752–53 (1970)), *report and recommendation adopted*, 2010 WL 3999474 (N.D.N.Y. Oct. 12, 2010).  "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'-and permissible-'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' " *Id*. (citations omitted).

During the plea hearing, the trial judge commented that Petitioner was charged with "a number of A-I felonies in the indictment" and despite those charges, Petitioner's counsel was "able to secure" a plea to an A-II felony.  TR. at 85.  When asked if he had questions of the court, Petitioner and the trial judge engaged in the following dialogue:

> THE DEFENDANT: Not a question.  But, like, you see that when I give myself up today I just asked for a weekend with my kids on Monday.  I would be back on Monday.  I'm ready to give myself up.
>
> THE COURT: I already informed Miss Coleman and I'm sure she informed you, sir, I was more than happy to allow you to have the weekend to think about it and come back, or plea today to the A-I and come back.  Ms. Coleman indicated that you were asking to plead to the A-II and you were willing to plead to it today and be put in.
>
> THE DEFENDANT: I know.  I figured that you would be concerned about me probably running, because I just figured you thought - - I thought that you would doubt that I would come in after I cop out to the A-I but I am just giving you the faith that I'm willing to give myself up today.
>
> THE COURT: I was willing to allow you the weekend.  Again,

16

> you knew we were on today and knew you were scheduled to
> start trial on Monday.  I was willing to allow you to turn yourself
> in on Monday if you plead to the A-I with a possible sentence of
> up to 24 years.  Ms. Coleman came back and indicated that you
> would prefer to plea to the A-II and you would plea to it today
> and be put in today.  That is the plea bargain.  Do you want to
> avail yourself of that plea bargain?

TR. at 96.  Petitioner indicated that he wished to take the plea and had no further questions.

*Id.*

A review of the transcript reveals that the judge explained the alternatives facing Petitioner without threatening or coercive language.  *See Grimes v. Lempke*, No. 9:10-CV-68 (GLS/RFT), 2014 WL 1028863, at *12 (N.D.N.Y. Mar. 14, 2014) (citing *United States ex rel. McGrath v. LaVallee*, 348 F.2d 373, 377 (2d Cir. 1965) ("The mere explanation of the alternatives facing the defendant . . . does not support the habeas corpus petitioner's allegations that the judge tricked and coerced (him) into pleading guilty by means of false assurances of consideration and a shorter sentence and fear inducing language.") (internal quotation marks omitted)).  Further, Petitioner's admissions during the plea hearing belie his claim that his plea was not knowingly entered.  Petitioner's assurances that counsel explained the charges and options to him and that he understood the rights he was giving up by pleading guilty and the consequences of his plea, including his appeal waiver, *see* TR. at 85-91, are entitled to the "weighty presumption[s] favoring the veracity of a defendant's sworn plea of guilty[.]" *Doe v. Menefee*, 391 F.3d 147, 173 (2d Cir. 2004); *see also Blackledge*, 431 U.S. at 74.

Therefore, Petitioner's claim for habeas relief, on this ground, is denied.

### C. Fourth Amendment Claim

Petitioner argues the search warrant and application were defective and evidence seized pursuant to the warrant should have been suppressed.  Dkt. No. 24 at 5.  This claim is not cognizable on federal habeas review.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494-95; *see Pina v. Kuhlmann,* 239 F.Supp.2d 285, 289 (E.D.N.Y. 2003) ("It is well settled that [Fourth Amendment] claims are not cognizable for habeas corpus review where a State has provided a full and fair opportunity to litigate this issue.").  As long as the state provides an opportunity to litigate a petitioner's Fourth Amendment claim, "it matters not whether the petitioner actually 'took advantage of the State's procedure.' "  *Welch v. Artus*, No. 1:04-CV-0205, 2007 WL 949652 at *19 (W.D.N.Y. 2007) (quoting *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002)).

Following *Stone*, review of Fourth Amendment claims in habeas petitions is proper only if: (1) the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (2) the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in that process.  *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977)); *see Ramdeo v. Phillips*, No. 1:04-CV-1157, 2007 W L 1989469 at *27 (E.D.N.Y. Jul. 9, 2007).

Petitioner cannot and does not contend that New York failed to provide a corrective

18

procedure to redress his alleged Fourth Amendment claim.  New York's corrective procedure for Fourth Amendment violations, codified at CPL § 710.10 *et seq*., is facially adequate.  *See* CPL § 710; *Capellan*, 975 F.2d at 70 n. 1.  Under CPL § 710, a defendant may move to suppress evidence he claims was unlawfully obtained when he has "reasonable cause to believe that such [evidence] may be offered against him in a criminal action."  *Huntley v. Superintendent, Southport Corr. Fac*., No. 9:00-CV-191 (DNH/GHL), 2007 WL 319846 at *7 (N.D.N.Y. Jan. 30, 2007) (quoting CPL § 710.20).

The record reflects that Petitioner took full advantage of his opportunity to completely adjudicate this matter in state court.  *See* TR. at 18-79 (suppression hearing transcript).  At the conclusion of the suppression hearing, a Decision and Order, with a detailed discussion of the facts and analysis of the relevant law, was issued.  SR. at 163-169.  The decision was examined on direct appeal by the AD.  *Gomez*, 162 A.D.3d. at 1312.

Nor do Petitioner's claims demonstrate an unconscionable breakdown in the state's corrective process.  An "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society."  *Cappiello v. Hoke*, 698 F.Supp. 1042, 1050 (E.D.N.Y. 1988) (noting such examples as bribing of trial judge, government's knowing use of perjured testimony, or use of torture to extract a guilty plea), *aff'd*, 852 F.2d 59 (2d Cir. 1988); *accord Capellan*, 975 F.2d at 70 (observing that "unconscionable breakdown" must entail some sort of "disruption or obstruction of a state proceeding").  The focus of the inquiry regarding whether there has been an "unconscionable breakdown" must be on "the existence and application of the corrective procedures themselves" rather than on the "outcome resulting from the application of adequate state

19

court corrective procedures." *Capellan*, 975 F.2d at 71; *see Graham*, 299 F.3d at 134. Nothing in the record supports a finding that there was an unconscionable breakdown in the corrective process in this case.

To the extent that Petitioner argues he was not afforded a full and fair opportunity to litigate his Fourth Amendment claim because the trial court failed to entertain a *Darden* hearing and his counsel was ineffective, *see* Dkt. No. 24 at 5; Dkt. No. 32 at 9, 18, that claim is insufficient to establish the sort of unconscionable breakdown necessary for the Court to address Petitioner's Fourth Amendment claims. *See Crenshaw v. Superintendent*, *Five Points Corr. Fac.*, 372 F.Supp.2d 361, 370 (W.D.N.Y. 2005) (finding the petitioner's "assertions that the state courts were incorrect and defense counsel incompetent do not constitute the sort of 'breakdown' referred to in *Gates v. Henderson"* that would permit habeas review of a Fourth Amendment claim); *Ferron v. Goord*, 255 F.Supp.2d 127, 132 (W.D.N.Y. 2003) (rejecting the *Darden* argument in the context of Fourth Amendment claims); *Brown v. Donelli*, No. 05-CV-6085, 2009 WL 3429785, at *4 (W.D.N.Y. Oct. 16, 2009) (holding that the trial court's failure to grant a *Darden* hearing was not an "unconscionable breakdown")*; Shaw v. Scully*, 654 F.Supp. 859, 865 (S.D.N.Y. 1987) ("Where petitioners have either taken advantage of an opportunity to present Fourth Amendment claims or deliberately bypassed the procedure . . . courts within this circuit have refused to equate ineffective assistance of counsel with unconscionable breakdown.") (citations omitted)); *Allah v. LeFevre*, 623 F.Supp. 987, 991-92 (S.D.N.Y. 1985) (rejecting a habeas claim that ineffective assistance of counsel can constitute an "unconscionable breakdown", stating that "it is plain from the majority opinion in *Gates* that the Court of Appeals had something other than ineffective assistance of counsel in mind when it

20

speculated that an unconscionable breakdown in state process might permit federal habeas review.").[7]

Finally, Petitioner cannot circumvent *Stone* with the claim that his due process rights were violated during the suppression hearing. *See* Dkt. No. 32 at 11; *see Ferron*, 255 F.Supp.2d at 133 (holding that the plaintiff's "attempt to [. . .] end-run around *Stone's* clearly established barrier to habeas review by 'transmogrifying' his barred Fourth Amendment claim into a due process claim must fail.") (citations omitted).

Accordingly, Petitioner's Fourth Amendment claim is barred by *Stone*, and Ground One of the petition is therefore dismissed.

### D. Jurisdiction

Petitioner contends that the trial court lacked jurisdiction because the prosecution failed to present a certified laboratory report to the grand jury and trial court. Dkt. No. 24 at 7. Respondent argues that the claim is not cognizable, precluded by Petitioner's guilty plea, and meritless. Dkt. No. 28 at 25-26.

Petitioner raised this argument in his § 440 motion. SR. at 476-480. The trial court rejected the argument finding, "[t]he Court has not been persuaded that jurisdiction over the case and defendant would be in any way divested by the language of CPL § 715.50 and/or any of defendant's allegations about laboratory reports." *Id.* at 552.

"It is well-settled that a claim involving an error in a grand jury proceeding is not cognizable upon federal habeas review" because "[t]here is no federal constitutional right to a

---

[7] The ineffective assistance of counsel claim is analyzed, *infra*, under *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). *Vasquez v. New York*, No. 17-CV-697, 2020 WL 2859007, at *6 (S.D.N.Y. Feb. 27, 2020) (reasoning that *Stone* does not bar an independent consideration of the ineffective counsel claim) (citations omitted), *report and recommendation adopted*, 2020 WL 1271363 (S.D.N.Y. Mar. 16, 2020).

grand jury" and "any defect in the grand jury proceeding is cured by [a] petitioner's subsequent conviction." *Zimmerman v. Superintendent Conway*, No. 10-CV-1393, 2013 WL 12379648, at *23 (S.D.N.Y. May 7, 2013) (rejecting argument that trial court erred when it failed to dismiss the indictment on the ground that the petitioner was presented to the grand jury in shackles and surrounded by corrections officers) (internal quotation marks and citations omitted), *report and recommendation adopted sub nom.*, 2018 WL 6413144 (S.D.N.Y. Dec. 6, 2018); *see also Bingham v. Duncan*, No. 01-CV-1371, 2003 WL 21360084, at *4 (S.D.N.Y. June 12, 2003) ("[C]laims of error relating to state grand jury proceedings are not cognizable on federal habeas review, since '[t]he right to testify before a grand jury is a state statutory right, and is not of constitutional dimension.' ") (quoting *Green v. Artuz*, 990 F.Supp. 267, 273 (S.D.N.Y. 1998)).

Further, once a defendant pleads guilty in open court, he or she may not "thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea" because the plea "represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) (per curiam) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings."). Here, Petitioner attempts to avoid the *Tollett* doctrine by framing his challenge as a jurisdictional defect and claims the trial court was not provided with evidence that the "substance" acquired was "in fact [a] narcotic drug (cocaine)." Dkt. No. 24 at 7. Regardless of Petitioner's characterization of the challenge, the alleged failure to produce a "certified laboratory analysis report" is a state procedural defect, not a constitutional issue, and thus, waived by Petitioner's guilty plea. *See Ariola v. LaClair*,

22

No. 07-CV-57 (GLS/VEB), 2008 WL 2157131, at *14 (N.D.N.Y. Feb. 20, 2008) (holding that jurisdictional challenges related to CPL § 730.30 relate to New York State law and fail to allege federal constitutional issues) *report and recommendation adopted*, 2008 WL 2157130 (N.D.N.Y. May 20, 2008).

In any event, Petitioner's allegation that the grand jury and trial court did not receive the reliable evidence that the substance was cocaine lacks merit. Inv. Missenis testified before the grand jury and averred that he "field tested" the "white powder substance" recovered from Petitioner's trunk and "preliminarily identif[ied]" the substance as approximately 1324 grams of cocaine. SR. at 502. Inv. Vardeen also testified before the grand jury and averred that her field testing of the substance was also positive for cocaine. *Id.* at 508.

During the suppression hearing, Inv. Missenis testified that, based upon his training and experience, the powder substance recovered from Petitioner's vehicle was powder cocaine. TR. at 35. Additionally, Petitioner's statements to the Court during the plea hearing belie his assertions:

> THE COURT: Sir the indictment as amended for the purposes of a plea reads and charges you as follows. That on or about March 18, 2014 at approximately 5:40 p.m. while on Lincoln Avenue, City of Cohoes, County of Albany, State of New York you did knowingly and unlawfully sell one or more preparations, compounds, mixtures, or substances containing a narcotic drug. And the preparations, compounds, mixtures or substances are an aggregate weight of one-half ounce or more; to wit, at that time, on that date and location you did sell to another person more than one-half ounce of a controlled substance. That controlled substance being cocaine. Is that, in fact, the case sir?
>
> THE DEFENDANT: Yep.

> THE COURT: Did you know that it was in a weight in excess of
> one-half ounce or more?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: And did you know that it was illegal and against
> the law to sell cocaine?
>
> THE DEFENDANT: Yep.

TR. at 93-94.

Accordingly, Ground Two of the petition is therefore dismissed.

### E. Ineffective Assistance of Counsel

Petitioner contends that his counsel was ineffective because (1) she allowed him to "plead to a completed crim[inal] . . . sale when neither an actual or even an 'attempted' sale of drugs ever occurred;" (2) she failed to advise Petitioner of a viable "agency" defense[8]; and (3) she allowed Petitioner to plea before examining the laboratory report. Dkt. No. 24 at 8-10. Respondent argues Petitioner's claim related to counsel's failure to review the laboratory report is unexhausted. Dkt. No. 28 at 15-24. Respondent further contends Petitioner's claims are foreclosed by his guilty plea and lack merit. *Id*.

### 1. Exhaustion

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A), (B)(I), (ii). To satisfy the exhaustion

---

[8] Petitioner asserts he could not raise this issue on direct appeal because "[d]efense counsel had never informed petitioner of such outcome determinative defense before plea or at sentence." Dkt. No. 24 at 9.

requirement, a petitioner must do so both procedurally and substantively.  Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in a federal habeas corpus petition.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted).  In other words, petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.

In the Order denying Petitioner's § 440 motion, the trial court listed Petitioner's challenged acts/omissions of his counsel as follows: (1) failure to request a *Darden* hearing; (2) failure to investigate the search warrant application and affidavits; (3) failure to demand the identity of the CI; (4) presenting untrue and inappropriate admissions in the omnibus motion; (5) failure to move to dismiss the indictment; and (6) unilaterally waived Petitioner's right to testify before the grand jury.  SR. at 552.

The exhaustion inquiry focuses on "whether the factual issue was presented to the state courts in a posture allowing full and fair consideration.  Where such consideration was given the issue by the state courts, the federal district court will presume the correctness of the state court's factual determinations."  *Smith v. Atkins*, 678 F.2d 883, 885 (10th Cir. 1982) (citing *Sumner v. Mata*, 449 U.S. 539 (1981)).  While Respondent is correct that the "exact issue" of whether the Petitioner's counsel was ineffective for failing to produce the laboratory report was not argued in the § 440 motion, this Court need not make a determination with respect to whether the claim is properly exhausted because, Petitioner could still present his

25

unexhausted claim to the state courts by filing a successive CPL § 440.10 motion.  There is no time limit within which an individual must bring a section 440.10 motion, and the statute specifically states that a motion to vacate may be made "[a]t any time after the entry of a judgment[.]"  CPL § 440.10(1).

Section 2254 "prohibits federal courts from granting relief to an applicant who has not exhausted the remedies available in the courts of the State," but allows "federal courts to deny the petition, regardless of whether the applicant exhausted his state court remedies." *Abuzaid v. Mattox*, 726 F.3d 311, 321 (2d Cir. 2013) (emphasis in original, internal quotation marks omitted) (citing 28 U.S.C. § 2254(b)(1)(A), (b)(2)).  Unexhausted claims may be denied on the merits if the claims are "plainly meritless" (*Rhines v. Weber*, 544 U.S. 269, 277 (2005)) or "patently frivolous."  *McFadden v. Senkowski*, 421 F.Supp.2d 619, 621 (W.D.N.Y. 2006); *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Because Petitioner's claims fail under either standard, the Court will dispose of them.

### 2. Legal Effect of Guilty Plea

Petitioner's ineffective assistance of counsel claims are foreclosed by his guilty plea. "In the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the petitioner would not have pleaded guilty and instead would have exercised his or her right to trial." *Beckary v. Chappius*, No. 1:11-CV-0850, 2012 WL 3045691, at *9 (W.D.N.Y. July 25, 2012) (citing *Hill*, 474 U.S. at 58-59).  A petitioner is limited to "attack[ing] the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within acceptable standards." *Id.*

(internal quotation marks and citations omitted).

Any claims "which involve counsel's pre-plea actions and do not affect the voluntariness of the plea itself [are] waived by [a] voluntary, knowing, and intelligent guilty plea." *Beckary*, 2012 WL 3045691, at *10.  Here, Petitioner's ineffective assistance claims are waived because, as previously discussed, Petitioner's plea was knowing, intelligent, and voluntary, and these claims involve pre-plea actions.  *See U.S. v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006) ("a guilty plea . . . conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue[.]"); *Smith v. Burge,* No. 03 CIV.8648, 2005 WL 78583, at *11 (S.D.N.Y. Jan. 12, 2005) (finding that counsel's alleged failure to advise the petitioner of possible defense prior to entry of his guilty plea to be a "pre-plea ineffective assistance claim"); *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (holding that the "assertion that an effective lawyer would have successfully obtained dismissal of his case, does not relate to the process by which [the defendant] agreed to plead guilty"); *Wimes v. Conway*, 10–CV–601T, 2011 WL 5006762, at *3 (W.D.N.Y. Oct. 20, 2011) (finding the petitioner's claim that his counsel was ineffective for failing to investigate certain evidence barred from review because the claim did not relate to the voluntariness of his guilty plea); *Hill v. West*, 599 F.Supp.2d 371, 392 (W.D.N.Y. 2009) (holding ineffective-assistance-of-counsel claims relating to pre-plea events, such as the failure to investigate and acquisition of discovery material, were effectively waived under *Tollett* because the petitioner's guilty plea was voluntary).

### 3.  Merits

Even assuming the claim survived Petitioner's valid plea, no relief would issue.  To

demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the result of the proceedings would have been different, and as a result, petitioner suffered prejudice. *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Premo v. Moore*, 562 U.S. 115, 121-22 (2011). The standard "must be applied with scrupulous care" in habeas proceedings, because such a claim "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial] proceedings[.]" *Premo*, 562 U.S. at 122. "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Richter*, 562 U.S. at 110 (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and further citation omitted). A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Even if petitioner can establish that counsel was deficient, he still must show that he suffered prejudice. *Id.* at 693-94.

Demonstrating constitutionally ineffective assistance of counsel is "never an easy task . . . [and] establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Premo*, 562 U.S. at 122 (citations and internal quotation marks omitted); *Burt v. Titlow*, 571 U.S. 12, 19 (2013) (noting that "AEDPA erects a formidable barrier" to federal habeas review of claims that have been adjudicated in state court). When reviewing a state court's decision under section 2254, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable–a substantially higher

threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks and citation omitted). Federal habeas courts "must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)" because "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." *Richter*, 562 U.S. at 105. Instead, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

The *Strickland* test applies "to challenges to guilty pleas based on ineffective assistance of counsel." *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (quoting *Hill*, 474 U.S. at 58). To establish prejudice in this instance, petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Petitioner raised ineffective assistance of counsel claims in his § 440 motion. While Petitioner did not include the specific grounds asserted in this habeas petition, the trial court stated, "to the extent defendant has raised any additional ineffective assistance claims that are outside the record, the court finds said arguments to be wholly conclusory and insufficient to warrant 440.10 relief or a hearing." SR. at 552. The court concluded, "[d]efendant's remaining arguments and requests for relief have been considered and found to be wholly lacking in merit." SR. at 522. The trial court's finding constitutes an adjudication on the merits rendering the AEDPA standard of review applicable with regard to that claim. *Francolino v. Kuhlman*, 365 F.3d 137, 141 (2d Cir. 2004); *Beckham v. Miller*, 366 F.Supp.3d 379, 388 (E.D.N.Y. 2019) (citing *Cavazos v. Smith*, 565 U.S. 1, 7, 9 (2011) (per curiam)), *appeal dismissed*, 2019 WL 4061513 (2d Cir. Aug. 6, 2019).

Counsel's alleged failure to present an agency defense is insufficient to establish

29

ineffective assistance of counsel. "A defense attorney cannot be deemed ineffective for

failing to pursue an unmeritorious defense or application." *Dark v. Crowley*, No.

6:16-CV-6432, 2020 WL 6291420, at *8 (W.D.N.Y. Oct. 27, 2020) (citing, *inter alia, United

States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995)).  Here, the record lacks evidence

suggesting that Petitioner's counsel acted without "reasonable professional judgment" in

declining to pursue an agency defense.  Moreover, Petitioner has not demonstrated that he

would have refused to plead guilty and gone to trial if his attorney prepared an agency

defense.  *See Rodriguez v. Mitchell*, No. 95 CV 2496, 1996 WL 705451, at *2 (E.D.N.Y. Nov.

26, 1996).

Petitioner was a second felony offender charged with two counts of criminal

possession of a controlled substance, one count of criminal sale of a controlled substance

and operating as a major trafficker and faced a possible sentence of up to 24 years.  TR. at

96.  Petitioner has failed to show that counsel's representation was deficient, much less that

he suffered prejudice as a result.  Counsel made an omnibus motion, cross examined the

prosecution's witnesses, and filed a motion to dismiss the indictment.  SR. at 191-193.

Counsel negotiated a favorable plea deal for the intentional actions which Petitioner allocuted

he engaged in.  Petitioner was permitted to plead to one count in satisfaction of the entire

indictment with a notable reduction in the amount of prison time to which Petitioner would be

subjected.  The record establishes counsel informed Petitioner of the advantages and

disadvantages of pleading guilty.  During the plead proceeding, Petitioner indicated he had

been adequately advised by his counsel, had enough time to talk to her about the plea

proceedings.  Petitioner also stated he was satisfied with the representation he received:

THE COURT: Ms. Coleman was able to secure for you a plea

to an A-II felony despite the fact that you are charged with a number of A-I felonies in the indictment. She has also been able to secure for you a plea offer that would result in a maximum period of incarceration of 12 years with five years post-release supervision.

As a result of her efforts in that regard it would be my understanding that you are highly satisfied with her representation. Is that the case?

THE DEFENDANT: I am satisfied.

TR. at 85-86.

Accordingly, the actions of counsel in securing the plea failed to meet the second *Strickland* prong as said actions were anything but prejudicial.

Thus, it appears that Petitioner benefitted substantially from counsel's representation. Consequently, Petitioner's claim of ineffective assistance of counsel must fail.

### F. Additional Grounds for Habeas Relief in Reply Papers

Petitioner asserted the following additional grounds for relief in his traverse and supplemental traverse: (1) his counsel was ineffective for failing to request a *Darden* hearing; (2) the prosecution failed to disclose the laboratory report, which was a *Brady* violation; and (3) the prosecutor presented false testimony to the grand jury. *See* Dkt. Nos. 32 and 34.

"[C]ourts have observed that a traverse, or reply, is not a proper vehicle for raising additional grounds for habeas relief, and claims raised for the first time in such a pleading have been considered as not properly before the court." *Lee v. Greene*, No. 9:05-CV-1337 (GTS/DEP), 2010 WL 5779440, at *5 (N.D.N.Y. Dec. 15, 2010) (citing Rules Governing Section 2254 Cases in the United States District Courts, Rule 2(c)(1)), *report and recommendation adopted*, 2011 WL 500673 (N.D.N.Y. Feb. 10, 2011). "To raise additional grounds, a petitioner must file an amended petition to provide adequate notice to the state of

31

additional claims." *Howard v. Graham*, No. 9:05-CV-1582 (LEK/DRH), 2008 WL 3925466, at *1 (N.D.N.Y. Aug. 20, 2008) (citing *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994)).

Here, Petitioner filed a petition (Dkt. No. 1), an amended petition (Dkt. No. 7), and a second amended petition (Dkt. No. 24). The aforementioned claims were not raised in any of the petitions. Moreover, Petitioner did not indicate to the Court, prior to filing his traverse or supplemental traverse, that he intended to assert new or additional claims. Therefore, Respondent was not afforded an adequate opportunity to address these additional claims and those claims are rejected. *Howard*, 2008 WL 3925466, at *1; *see also Parker v. Smith*, 858 F.Supp.2d 229, 233 (N.D.N.Y. 2012) (refusing to address new arguments raised in the traverse that were not in the petition because a traverse or reply is not the proper pleading in which to raise additional grounds for habeas relief) (citations omitted); *Parker v. Duncan*, No. 9:03-CV-0759 (LEK/RFT), 2007 WL 2071745, at *6 (N.D.N.Y. July 17, 2007), *aff'd*, 255 Fed. App'x 565 (2d Cir. 2007).

Even assuming the grounds were properly before the Court, the claims lack merit. Petitioner's claim related to counsel's failure to request a *Darden* hearing is procedurally barred. *See* N.Y. CPL § 440.10(2)(b); *Kimbrough v. Bradt*, 949 F.Supp.2d 341, 359 (N.D.N.Y. 2013) ("It is well-settled in this Circuit that section 440.10(2)(b) can provide an adequate and independent state law ground on which to deny habeas relief.") (citing, *inter alia, Holland v. Irvin*, 45 Fed. App'x 17, 20 (2d Cir. 2002)). The allegations related to the failure to disclose the laboratory report lack merit. *See* Part IV(D), *supra*; *Vasquez v. Stinson*, No. CV 96-1917, 1997 WL 469990, at *7 (E.D.N.Y. June 17, 1997) (reasoning that, to warrant a reversal of a conviction based upon a deprivation of due process under *Brady*,

the petitioner must establish that the evidence in a laboratory report is sufficiently exculpatory).

Finally, as discussed *supra*, errors in grand jury proceedings are not cognizable on federal habeas review.  *See* Part IV(D), *supra*.

## V.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the Clerk of the Court shall amend the caption to substitute Mark Miller for Mark Royce; and it is further

**ORDERED** that the second amended petition, Dkt. No. 24, is **DENIED AND DISMISSED** in its entirety; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[9] and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**DATED:** November 20, 2021

Thomas J. McAvoy
Senior, U.S. District Judge

---

[9]  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).